**STATE of Iowa, Appellee,**

v.

**Darrell L. GOODWIN, Appellant.**

**No. 55896.**

Supreme Court of Iowa.

Nov. 14, 1973.

Rehearing Denied Jan. 10, 1974.

Paul E. Watts, Omaha, Neb., and Noran Davis, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., and Lyle A. Rodenburg, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

MOORE, Chief Justice.

Defendant, Darrell Goodwin, was found guilty of receiving stolen property in violation of Code section 712.1. Thereafter he was sentenced as an habitual criminal under the provisions of Code section 747.5. He has appealed. We affirm.

Defendant urges five propositions for reversal, (1) his trial and conviction violated his right against double jeopardy, (2) the trial court erred when it denied his motion to suppress evidence obtained when he was arrested, (3) he was promised immunity in Iowa and therefore Iowa cannot prosecute him, (4) all of the elements of receiving stolen property were not proved, in particular his knowledge the property was stolen and (5) the trial court erred in not following the guidelines set out in State v. Sisco, Iowa, 169 N.W.2d 542, in taking his admissions of prior convictions.

This case and State v. O'Kelly, Iowa, 211 N.W.2d 589, in which we filed our opinion on October 17, 1973, are companion cases. Each arose out of the same incident when Goodwin and O'Kelly were arrested on a Pottawattamie County farm about 10:30 P.M., September 2, 1973 in possession of money bags containing $2614.83 which they had just removed from a hidden safe. It had been stolen in Omaha the night before. Inasmuch as the factual background is fully set out in our O'Kelly opinion, we will not repeat the facts in detail here as they relate to defendant's first four assigned errors.

I. Appeal counsel here and in O'Kelly is the same. Defendant's first

four assigned errors are the same in each appeal. In O'Kelly we carefully considered each of those four assigned errors and found no reversible error. Our holdings in O'Kelly are dispositive of defendant Goodwin's first four assigned errors. Here, as in O'Kelly, we hold they are without merit.

II. In the case at bar after the jury returned its verdict finding defendant guilty of receiving stolen property as charged, the trial judge directed they be returned to the jury room. They were advised that perhaps further service would be necessary. The trial judge then read to defendant and his trial counsel the amendment to the county attorney's information setting out the details of three alleged prior convictions. They were that defendant on November 25, 1961 had been convicted of burglary in the District Court of Douglas County, Nebraska, and had been committed to the Nebraska State Reformatory for four years; on May 27, 1965 defendant had again been convicted of burglary in the same court and committed to the Nebraska Penal Correction Complex for a term of five years and on May 27, 1965 he had been convicted of the crime of malicious destruction of property in the same court and committed to the Nebraska Penal Correction Complex for a term of three years.

After some discussion between defense counsel, Robert M. Dippel, the prosecutor, and the trial judge as to whether defendant had been convicted of two offenses on May 27, 1965, defendant stated they grew out of the same incident. The court then asked: "How do you say? Do you admit the allegations? Are you guilty or not guilty?" Defendant answered, "Admit them. I don't want to argue them."

The prosecutor then produced exhibits A and B which were certified copies of the two conviction records on May 27, 1965. They were examined by defense counsel and after further discussion, the court said, "What do you say?" Defendant gave the answer, "Won't argue." Mr. Dippel then asked defendant, "Do you want to admit the records as being authentic?" Defendant answered, "Don't want to argue, won't do any good."

The court then asked, "Do you mean to say you are guilty or not guilty?" Mr. Dippel then stated, "He said he is guilty." Exhibits A and B were received in evidence after defense counsel waived objections thereto.

On request of defense counsel time for sentence was set for March 3, 1973. Subsequently defendant was sentenced to a term of not to exceed 25 years in the state penitentiary. Said sentence was pronounced under Code section 747.5. It provides:

"Whoever has been twice convicted of crime, sentenced, and committed to prison, in this or any other state, or by the United States, or once in this state and once at least in any other state, or by the United States, for terms of not less than three years each shall, upon conviction of a felony committed in this state after the taking effect of this section, be deemed to be a habitual criminal, and shall be punished by imprisonment in the penitentiary for a term of not more than twenty-five years, provided that no greater punishment is otherwise provided by statute, in which case the law creating the greater punishment shall govern."

The thrust of the fifth assigned error is the trial court should have interrogated defendant under the guidelines set out in State v. Sisco, Iowa, 169 N.W.2d 542. Stated briefly they require a trial judge before accepting a plea of guilty to an indictable misdemeanor or felony charge to personally interrogate the accused to determine whether the plea is being made understandingly and voluntarily.

■ Defendant's argument is based on the erroneous premise that section 747.5 creates a separate and distinct crime. We and courts of other jurisdictions have uniformly held that recidivist statutes, such as

section 747.5, do not create a separate crime and that the allegation of prior convictions is made only for the purpose of determining the penalty to be imposed upon conviction for the primary offense.

In State v. Wessling, 260 Iowa 1244, 1261, 150 N.W.2d 301, 311, we quote this from State v. Davis, 258 Iowa 1192, 1195, 140 N.W.2d 925, 926:

"'* * * an allegation of a prior conviction does not charge a separate crime but is made only for the purpose of determining the penalty to be imposed upon conviction of the primary offense. And such allegation does not amount to charging a different or greater degree of crime. * * *.

"'The section simply provides for a greater penalty upon conviction for the third or more times of the crimes specified. No one would contend a person could be prosecuted under this section just because he had two or more convictions. He must thereafter be convicted of one of such crimes, usually referred to as the primary offense, which offense has been committed after such conviction. When he is thus convicted a greater penalty is imposed because of his prior convictions. The section does not provide a separate crime.'"

See also State v. Gaskey, 255 Iowa 967, 969, 970, 124 N.W.2d 723, 725; State v. Eichler, 248 Iowa 1267, 1273, 83 N.W.2d 576, 579, and citations.

Wessling and Davis, defendants in the above cited cases, being dissatisfied with our holdings each sought and received review of their contentions in Wessling v. Bennett (8 Cir.), 410 F.2d 205 and Davis v. Bennett (8 Cir.), 400 F.2d 279. In each the Iowa judgment and sentence was upheld.

In Wessling at page 208, 410 F.2d, the court states:

"The Supreme Court has uniformly held that allegations of prior convictions under recidivist statutes do not charge a separate and distinct crime but bear only upon tne permissible punishment. Oyler v. Boles, supra; [368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446] Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683; Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917."

 State v. Sisco, supra, makes no requirement for interrogation of an accused regarding admissions of prior convictions as they bear on the penalty to be imposed after conviction of the crime charged.

The admissions of defendant and his counsel obviated the necessity of submitting to the jury the question of defendant's prior convictions, State v. Ganaway, 243 Iowa 1316, 1319, 55 N.W.2d 325, 326.

Defendant's fifth assigned error is untenable. We find no reversible error.

Affirmed.